[Cite as *17AP-664*, 2018-Ohio-3180.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Joseph Davis, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-664 |
| v. | : | (C.P.C. No. 08DR-2694) |
| Carmen Davis, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 9, 2018

**On brief:** *Jefferson E. Liston*, for appellee. **Argued:** *Jefferson E. Liston.*

**On brief:** *H. Leon Hewitt*, for appellant. **Argued:** *Mary T. Foster.*

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations

BRUNNER, J.

{¶ 1} Defendant-appellant, Carmen Davis[1], appeals a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, entered on September 5, 2017. The decision being appealed adopted a magistrate's decision denying contempt motions filed by both parties and granting plaintiff-appellee's, Joseph Davis's, motion to enforce the divorce decree and to order the sale of the marital residence. Because Carmen failed to object to the magistrate's decision, she has forfeited the arguments she attempts to assert as assignments of error. Accordingly, we affirm.

---

[1] As the parties share a last name, for the sake of clarity we refer to them by first name, not intending informality or some inferred personal favoritism.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On July 9, 2008, Joseph filed for divorce.  (July 9, 2008 Compl.)  Two years later, the trial court entered into the record a divorce decree and shared parenting plan, both of which were signed by all parties.  (July 30, 2010 Divorce Decree; Aug. 10, 2010 Shared Parenting Plan.)  The decree provided, in part and relevant to the arguments in this appeal:

> The parties are the owners of real property known as [the] * * * "Marital Residence"[].  The parties agree [Carmen] shall have until August 31, 2010, to obtain financing to purchase the Marital Residence.  Should [Carmen] obtain said financing and close on the purchase, [Joseph] shall gift any and all of his equitable interest in and to said Marital Residence to [Carmen.]

> Should [Carmen] be unable to obtain financing and close on the purchase of said Marital Residence on or before August 31, 2010, [Joseph] agrees to use his best efforts to refinance the balance of the mortgage and [Carmen] shall have until March 2, 2011, in which to obtain financing and purchase the Marital Residence.  Should [Carmen] obtain financing and close on the purchase of said Marital Residence on or before March 2, 2011, [Carmen] shall pay [Joseph], after the payment of any mortgage(s), property taxes, and all other matters outstanding associated with the Marital Residence, TWENTY THOUSAND DOLLARS ($20,000.00) of the net proceeds.

> Should [Carmen] be unable to obtain financing and close on the purchase of the Marital Residence on or before March 2, 2011, [Joseph] and [Carmen] agree that said Marital Residence shall be immediately listed for sale by a professional real estate agent and sold.  However, on no condition shall possession of the Marital Residence be transferred and sold until such time as [Joseph] and [Carmen]'s minor child, [] Davis, graduates from high school.  Upon the sale of the Marital Residence, after the payment of any mortgage(s), property taxes and all other matters outstanding associated with the Marital Residence, [Joseph] shall receive twenty-five percent (25%) of the net proceeds and [Carmen] shall receive seventy-five percent (75%) of the net proceeds.

> Until such time as their Marital Residence is sold, [Carmen] will have the use and occupancy of the Marital Residence.  Each party shall cooperate fully in the sale of the Marital Residence and use their good-faith efforts to achieve the sale of the

Marital Residence. * * * [Carmen] shall be responsible for the mortgage payment, real estate taxes, and any insurance payment due and payable for the Marital Residence beginning August 2, 2010, until said property is sold. [Carmen] shall also be responsible for the utilities and ordinary maintenance.

(July 30, 2010 Divorce Decree at 3-4.)

{¶ 3} After the decree and parenting plan were entered in 2010, no significant filings appear in the record of the case for several years until 2014. At that point, Carmen began filing a series of motions heard over several dates in January through June 2016. Carmen sought to alter the divorce decree to modify and extend spousal and child support. (Oct. 22, 2014 Mot. to Modify; Jan. 14, 2015 Am. Mot. to Modify.) The domestic court denied her motions and we subsequently affirmed. *Davis v. Davis*, 10th Dist. No. 15AP-1078, 2016-Ohio-7790. Both parties filed discovery motions against each other but these were resolved in a decision that has neither been separately appealed nor addressed in this appeal. (Mar. 30, 2016 Jgmt. Entry.) Both Carmen and Joseph sought to hold the other in contempt for failure to abide by terms of the divorce decree. (Jan. 7, 2015 Mot. for Contempt; Feb. 13, 2015 Mot. for Contempt.) On June 29, 2015, Joseph also sought an enforcement order compelling sale of the marital residence because Carmen had never purchased the home and their child had graduated from high school in May 2015. (June 29, 2015 Mot. to Enforce Sale.)

{¶ 4} The hearing on the motions for contempt, to enforce a sale, and collateral issues about fees occurred over a period of time on January 4, March 8, April 5, June 6, and June 7, 2016. (Hearing Tr. Vol. 1, filed Jan. 26, 2018; Hearing Tr. Vol. 2, filed Jan. 26, 2018.) Following the hearing and written closing briefs from both parties, the magistrate signed a decision on August 25, 2017 in which she found that Carmen had not financed or purchased the property within any of the time frames provided for by the divorce decree. (Sept. 5, 2017 Decision at 3, 12.) The magistrate noted that, under the terms of the decree, the house should have been marketed immediately after Carmen's failure to obtain financing and, in any event, certainly placed on the market no later than June 2015 following their child's high school graduation in May 2015. *Id.* at 12. The magistrate ordered the marital residence to be sold. *Id.* at 12-13.

{¶ 5} With respect to the motion for contempt for Joseph's alleged failure to refinance, the magistrate noted that Joseph had begun to refinance the home but that

Carmen had requested to be a co-borrower in order to improve her credit. (Sept. 5, 2017 Decision at 3-4; Correspondence Regarding Refinance, Ex. 2 to Jan 7, 2015 Mot. for Contempt.) The magistrate stated that Joseph agreed to permit Carmen to be a co-borrower on three conditions: first, that she put the utilities for the house in her name as ordered by the divorce decree; second, that she meet him halfway between Columbus and Cincinnati for exchanges of their child; and third, that Carmen agree to sign an amended tax return for the year 2008 to file jointly. (Sept. 5, 2017 Decision at 3-4.) When Carmen failed to meet these terms, Joseph declined to move forward with joint refinancing. *Id.* at 4. Carmen's attorney then threatened suit against the bank resulting in Joseph being unable to complete refinancing with that bank. *Id.* The magistrate found that Carmen had failed to show that Joseph could have qualified for other refinancing of the marital residence or under what terms. *Id.* The magistrate also noted that by the time the motion was heard, the parties' child had graduated and by now it was time to sell the house, not refinance it. *Id.* at 5. The magistrate denied Carmen's motion for contempt. *Id.* at 2-5.

{¶ 6} At the end of the decision, in bold print, the magistrate included the following warning:

> **NOTICE TO THE PARTIES:**
>
> **A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law in that decision unless the party timely and specifically objects to that finding or conclusion as required by Civil Rule 53 (E)(3)/Juvenile Rule 40(E)(3).**

(Emphasis sic.) *Id.* at 13.

{¶ 7} On September 5, 2017, the trial court adopted the magistrate's August 25, 2017 decision pursuant to Civ.R. 53(D)(4)(e)(i) before the 14-day period for objections expired. Carmen filed no objections to the decision, despite the written warning appearing in it and despite the fact that under Civ.R. 53(D)(4)(e)(i), filing objections would have resulted in an automatic stay until the trial court considered any objections. Instead, on September 19, 2017, Carmen filed a notice of appeal to this Court. (Sept. 19, 2017 Notice of Appeal.)

## II. ASSIGNMENTS OF ERROR

{¶ 8} Carmen posits two assignments of error for our review:

[1.] The Magistrate erred in denying the contempt motion because Mr. Davis failed to use his best efforts to refinance the balance of the mortgage.

[2.] The Magistrate erred when she granted Plaintiff's Motion to Sell the Marital Home and an award of attorney fees.

## III.  DISCUSSION

{¶ 9}   A party may object to a magistrate's decision within 14 days of its entry into the record. Civ.R. 53(D)(3)(b)(i).  Even when a magistrate's decision is adopted by the court within that period, objections filed within that period remain timely and an automatic stay of the court's judgment adopting the magistrate's decision occurs by operation of Civ.R. 53(D)(4)(e)(i).  In the absence of a party's objections the trial court need not perform an independent review, but rather, need only review the magistrate's decision to determine if "there is an error of law or other defect evident on the face of the magistrate's decision." *Compare* Civ.R. 53(D)(4)(c) *with* Civ.R. 53(D)(4)(d).  On appeal, any party that failed to object to the magistrate's decision before the trial court cannot raise objections before the appellate court except to assert that plain error is evident in the trial court's decision:

*Waiver of right to assign adoption by court as error on appeal.*  Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

(Emphasis sic.) Civ.R. 53(D)(3)(b)(iv).

{¶ 10} The Supreme Court of Ohio has made clear that this rule must be followed:

Claimant's arguments before us derive directly from the conclusions of law contained in the magistrate's decision. Claimant, however, did not timely object to those conclusions as Civ.R. 53(E)(3) requires. Civ.R. 53(E)(3)(b) prohibits a party from "assigning as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."

*State ex rel. Booher v. Honda of Am. Mfg.*, 88 Ohio St.3d 52, 53-54 (2000) (citing a predecessor division of Civ.R. 53).  It continues to require that parties abide by this rule, as does this Court:

> Appellant's arguments derive directly from the conclusions of law provided in the magistrate's decision. Appellant, however, did not object to those conclusions as Civ.R. 53(D)(3)(b) requires. Thus, pursuant to that rule and *State ex rel. Booher v. Honda of Am. Mfg., Inc.* (2000), 88 Ohio St.3d 52, 2000 Ohio 269, 723 N.E.2d 571, we can proceed no further.

*State ex rel. Findlay Indus. v. Indus. Comm.*, 121 Ohio St.3d 517, 2009-Ohio-1674, ¶ 3; *see also, e.g.*, *Lavelle v. Lavelle*, 10th Dist. No. 12AP-159, 2012-Ohio-6197, ¶ 8.

{¶ 11} Carmen does not acknowledge in her appellate brief that she filed no objections to the magistrate's decision before the trial court. Nor does she allege or otherwise demonstrate plain error.  Carmen has forfeited all arguments against the trial court's decision in her appeal before this Court.  As such, Carmen's two assignments of error are overruled.

## IV. CONCLUSION

{¶ 12} Carmen did not object to the magistrate's decision and did not request that we find or consider plain error.  Accordingly, her arguments are forfeited and, on that basis, we overrule both of her assignments of error.  The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

———————————